[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff whose maiden name is Susan Resavy and the defendant were married at Wolcott, Connecticut on April 17, 1982. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of this marriage Angela B. Campion born March 27, 1986. The plaintiff does not have any other minor children. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on March 15, 1956. This is the plaintiff's first marriage.
The plaintiff had a couple thousand dollars in bank accounts when the parties married.
She is in good health.
The plaintiff's financial affidavit shows a Webster Bank CD in the name of the parties' daughter as well as a Liberty Colonial Fund in the daughter's name as well as a Webster Bank Joint CD in both parties name. Those funds were from gambling income of the defendant. He would turn over part of his gambling winnings to the plaintiff.
The plaintiff owns furniture, furnishings and miscellaneous personal property with a total fair market value of approximately $3,000 as well as jewelry and a mink coat with a total fair market value of approximately CT Page 11761 $17,000. of the total of $17,000 approximate value shown by the plaintiff on her financial affidavit for jewelry and a mink coat, approximately $12,000 — $14,500 of that amount is for jewelry. She has bank accounts as shown on Schedule C to her financial affidavit with a total value of approximately $18,343. The Webster Bank CD that the plaintiff shows as having a value of $6,551 has a total value of approximately $13,000 with the $6,551 representing the plaintiff's one-half interest and the defendant also owning a one-half interest in that CD. All of the bank accounts shown on Schedule C to the plaintiff's financial affidavit except for the Webster Bank CD are in the plaintiff's name only. She has deferred compensation plans with a total value of $39,681.61, consisting of a National Financial Service IRA with a value of $35,842.23 and a Roth IRA with a value of $3,839.38. She owns stocks and bonds with a total value of $25,149.53, consisting of a Liberty Colonial Funds with a value of $13,874.53 and a National Financial Service Money Market with a value of $11,475. She has liabilities totaling $53,000 consisting of attorney's fees of approximately $35,000 and $18,000 for expert appraisal valuation to Westport Valuation Services. She has paid Westport Valuation Services $5,000 to date and paid her attorney $7,500 to date. She has also paid Walter Kloss, another expert appraiser, between $5,000 and $7,500.
In addition to the income that the plaintiff shows on her financial affidavit of March 4, 2002, she had an annual income of $1,573 as a school yearbook advisor. As of July 1, 2000, her employer pays 94% of her cost for health insurance. Her financial affidavit shows a $20 weekly expense for medical/dental insurance premiums. The plaintiff's current employment contract shows that the total annual health insurance premium is $11,500 with 6% of that paid by the employee or $690. That averages out to approximately $13 per week rather than $20 per week as shown on the plaintiff's financial affidavit. The health insurance covers both the plaintiff and the minor child. At the present time the plaintiff does not contribute to a 401k plan or to her retirement plan. If she quits her job she would get a refund regarding her retirement plan.
She owns a 1997 Buick with a fair market value of approximately $15,600 and no loan balance. She has life insurance through her employer in the face amount of $15,000 with no cash surrender value.
The plaintiff's financial affidavit shows a weekly expense for gifts of $100. That expense averaged approximately $69 weekly in the calendar year 2001. She also shows a $100 weekly miscellaneous expense. That includes her computer course, security system, dry cleaning and stamps as well as other expenses. The total amount for the calendar year 2001 was $4,100 or approximately $80 weekly. She also shows $100 weekly for home maintenance/repairs on her financial affidavit. During the calendar year CT Page 11762 2001 her total expenses for home maintenance/repairs was $3,177 or approximately $60 weekly average.
The plaintiff worked as a registered nurse at St. Mary's Hospital from 1979 to the date the parties married on April 17, 1982. The plaintiff quit her job at St. Mary's Hospital approximately three months after the parties married. The defendant did not request that the plaintiff leave her position at St. Mary's Hospital where she was employed as a registered nurse. The defendant was involved in his catering business and she chose to work with him in that business.
The plaintiff attended school at the University of Hartford and obtained a Bachelor's Degree in nursing in 1994. The defendant was in agreement with the plaintiff obtaining that degree.
She obtained her Bachelor's Degree and Master's Degree between 1993 and 1997. As a result of obtaining her degree as an Advanced Practice Registered Nurse in 1997, she is able to prescribe medication that she could not do as a registered nurse. She would be able to earn between $58,000 to $62,060 annually if she were to obtain employment as an Advanced Practice Registered Nurse. Due to the hours that she works in her present employment and her ability to be home at about the time the minor child arrives home from school, the court finds it is in the best interest of the child that she continue in her present employment. Between 1993 and 1997, she was earning approximately $20.50 hourly with an added 10% for employment after 3:00 p. m. Her present employment as a school nurse requires her to work 190 days per school year for which she receives approximately $31,000. She could earn an additional $28 hourly if she worked during the summer months. The plaintiff's current work hours are from 7:30 a.m. to 3:00 p. m. which allows her to be home after 3:00 p. m. In 1993, she obtained employment at St. Mary's Hospital working part-time approximately 24-30 hours weekly. She also had the responsibility for caring the parties' daughter. Her job at St. Mary's ended in 1997 when she resigned due to the fact that she was obtaining her Master's Degree and was looking for employment at a higher level than the staff nurse position that she held. She was looking for employment as a nurse practitioner for which she received her license in the end of 1997. She was unable to obtain employment as a nurse practitioner. She then obtained employment as a school nurse for the town of Wolcott in September of 1997 in a supervisory position. That employment was close to home and was in the same school district that the parties' daughter attended. The defendant agreed to the plaintiff taking that position.
The plaintiff was employed by Campion Ambulance Services, Inc. from 1982 through January, 1999, as an emergency medical technician (EMT) and CT Page 11763 also did book work. She was paid on a weekly basis. She initially received $250 weekly gross. That was increased to between $400 — $450 gross by January, 1999. Her employment by Campion Ambulance Services, Inc. terminated in January, 1999.
The plaintiff spent approximately 2 to 3 hours once a month doing the books for Campion and also spent a couple of hours monthly organizing checks for a total of 4 to 5 hours monthly.
The defendant was born on July 17, 1936. This is the defendant's second marriage. The defendant has three adult children from his first marriage. Those children were ages 22, 19 and 16 when the parties married.
The defendant is not seeking COBRA benefits under the plaintiff's employment.
On the date the parties married the defendant owned a home at 1212 Woodtick Road, Wolcott, Connecticut. He also owned BC Medical Transport that was later merged into Campion Ambulance Services, Inc. BC Medical Transport was a livery business that would transport patients who were confined to a wheelchair. He also owned 15 West Dover Street, Waterbury, Connecticut and the lot at Port Malabar, Florida. He also owned Campion Ambulance Services, Inc.
The defendant has had two heart attacks. He also has kidney stone problems and has had prostate surgery. One of his heart attacks was in early 1993, and the other was in 1999 or 2000.
The defendant was discharged from a hospital on December 14, 2001, with a final diagnosis of streptococcal pneumonia and acute renal failure. He then entered Gaylord Hospital where he was discharged on January 22, 2002. He presently remains in fair condition, continuing rehabilitation at Gaylord due to ongoing muscle weakness. His future medical condition remains uncertain. His physician believes that he will not return to his prior work status. The defendant does want to return to work.
The defendant owns the following real assets with the following fair market values, and net equity:
Address Owner FMV MTG. NET EQUITY
A. 1212 Woodtick Road Defendant $ 260,000 -0- $ 260,000 and adjoining lot 1218 Woodtick Road CT Page 11764 Wolcott, Connecticut
B. 15 W. Dover Street Defendant $ 259,880 $ 137,900 $ 121,980 West Liberty Street 1994 (as of 2-15-02) Waterbury, Connecticut
C. Port Malabar, Florida Defendant $ 15,000 -0- $ 15,000 Building Lot
D. 1146 Spindle Hill Road Defendant $ 366,000 $ 134,638 $ 231,362 Wolcott, Connecticut Fleet and (as of 2-19-02) Embassy of -Wolcott- Sole Proprietor
E. 3 Country Club Road Defendant $ 170,000 $ 52,822 $ 117,178 Cheshire, Connecticut Webster (as of 2-28-02)
F. 1969-1975 S. Main Street Campion, $ 300,645 $ 18,000 $ 282,645 Waterbury, Connecticut LLC Fleet 8 Bay Garage Office (as of 2-28-02)
G. 197 Catering Road Defendant $ 285,000 $ 215,728 $ 69,272 Wolcott, Connecticut (as of 1-31-02
H. Campion Realty Defendant $0
I. Campion Ambulance Defendant $ 3,250,000 $3,250,000 Services, Inc.
J. Campion-Kenney Defendant $0 $0 Service Station
 A. 1212 1218 Woodtick Road
 The defendant obtained title to this property on December 21, 1978, for $65,000. It was financed in part by cash and a mortgage in the face amount of $45,700. That mortgage was paid in full on August 26, 1998. He also financed the purchase in part by a purchase money second mortgage dated December 21, 1978, in the face amount of $14,300 that was paid in full by December, 1984.
B. 15 West Dover Street and West Liberty Street CT Page 11765
 The defendant is the sole owner of these properties. Campion Ambulance Services, Inc. is the lessee.
 He obtained title to the West Dover Street property on November 10, 1981 for $225,000. He obtained title to the West Liberty Street property on June 23, 1995 for $10,000.
C. Port Malabar, Florida
This is a building lot that the defendant purchased in 1972.
D. 1146 Spindle Hill Road and Embassy of Wolcott
 1146 Spindle Hill Road, Wolcott is the address where Embassy catering is located.
 Embassy of Wolcott is in the catering business. The defendant did not own the real estate where it was located when the parties married. He acquired ownership to the real estate on September 21, 1983 for $162,500. In addition to the land purchase, he also paid approximately $250,000 for the Embassy of Wolcott business. The transaction was financed in part with a mortgage deed in the face amount of $247,500 that was taken out on September 20, 1983. He had owned a one-half interest in the Embassy of Wolcott business for approximately one year prior to the time he bought out his partner for between $40,000 and $45,000. The partnership buy-out was financed through a loan that he obtained from Mattatuck Bank and Trust Company in the face amount of $42,929.52 on September 20, 1983. That mortgage was also secured by the property the defendant owned on Woodtick Road. Prior to the defendant buying out the remaining half interest from his partner, he had paid his then partner approximately $40,000 to $45,000 to acquire an initial one-half interest in Embassy of Wolcott. The plaintiff worked between 1982 and 1992 at the catering business doing interviews, inventory, hiring, ordering of liquor and food, and obtaining people to do repairs. She did not draw any salary until approximately the last six months that she was employed during 1992.
 The plaintiff was a part-time manager and sales person for the business for approximately six to seven years between 1982 and 1992. The defendant worked on the floor as bus boy, waiter and maitre de for every large event of over 100 people for approximately ten to twelve years. During the six to seven years that the plaintiff was a part-time manager, there was another person who was also jointly with the plaintiff, a part-time manager.
CT Page 11766
E. 3 Country Club Road, Cheshire, Connecticut.
 The defendant is the sole owner of this property. Campion Ambulance Services, Inc. is the lessee. He purchased the property on or about November 1, 1991.
F. 1969-1975 S. Main Street
 Campion, LLC is the owner of this property. The defendant has a 95% interest in Campion, LLC and his son has a 5% interest. This property was purchased on August 7, 1997, for $225,000. Campion Ambulance Services, Inc. is the lessee at this property.
 Campion Ambulance Services, Inc. vehicles are stored at this location and it is used to answer Campion Ambulance Services, Inc. phone calls and to dispatch vehicles from that location.
G. 197 Catering Road, Wolcott, Connecticut
The defendant purchased this property in 1999 and he resides there.
H. Campion Realty
 No credible evidence was presented regarding any value to this asset.
I. Campion Ambulance Services, Inc.
 When the defendant purchased Campion Ambulance Services, Inc. in 1976, the business was almost bankrupt.
The defendant is the sole owner of Campion Ambulance Services, Inc.
 The following chart for the fiscal year May 1 to April 30 from 1990 through 2000, shows the gross receipts and taxable income for Campion Ambulance Services, Inc.
 Fiscal year May 1 Gross Receipts Campion Ambulance to April 30 Services, Inc. Taxable Income
 1990 $ 3,814,638 ($ 40,843) 1991 $ 4,472,418 ($ 8,662) 1992 $ 5,513,253 $483,773 CT Page 11767 1993 $ 5,735,953 $302,165 1994 $ 6,728,772 $503,707 1995 $ 7,899,240 $467,582 1996 $ 8,755,671 $246,769 1997 $ 9,628,693 $849,311 1998 $10,220,172 $374,863 1999 $ 9,117,965 $171,274 2000 $10,796,222 $762,096
 The following chart shows the defendant's compensation from Campion Ambulance Services, Inc. and the loans payable to the defendant from Campion Ambulance Services, Inc. for the years ending April 30, 1997 through April 30, 2001.
 Year Ending Defendant's Compensation Loans payable to from Campion defendant from Ambulance Services, Inc. Campion Ambulance Services, Inc.
 April 30, 2001 $423,250 $ 75,050 April 30, 2000 $208,000 $ 27,034 April 30, 1999 $434,500 $168,401 April 30, 1998 $388,300 $101,161 April 30, 1997 $372,000 $155,960
 The following chart is a summary of contracts recently entered into by Campion Ambulance Services, Inc. to provide various services:
 Town contracted Date of Term Compensation with Contract
 Cheshire 7-1-01 to 6-30-06 $150,000 fiscal year 2001-2002 $200,000 fiscal year 2002-2003 $265,000 fiscal year 2003-2004 $215,000 fiscal year 2004-2005 $221,800 fiscal year 2005-2006
 Naugatuck 6-25-01 $200,000 annually, paid $50,000 Wolcott quarterly
 Wolcott 7-1-01 to 6-30-02 $200,000 1st renewal $200,000 2nd renewal $205,000 3rd renewal $205,000
CT Page 11768
 Woodbury 7-1-01 6-30-04 $2,500 per year for Paramedic Intercept Service plus $340 for each paramedic unit utilized
 Bethlehem 7-1-01 6-30-04 $2,500 per year for Paramedic Intercept Service plus $340 for each paramedical unit utilized
 Middlebury 7-1-01 6-30-04 $2,500 per year for Paramedic Intercept Service plus $340 for each paramedical unit utilized
 Charlotte 6-18-01 6-30-02 $60,000 per quarter Hungerford Hospital
 Bridgewater, 4-1-01 6-30-02 $240,000 Kent, New Milford, Roxbury, Sherman, Warren, Washington New Milford Hospital
 Southbury 7-1-00 6-30-01 $100,000 first year $190,000 second year
 Torrington 7-1-00 6-31-05 $220,000 first year $220,000 second year $220,000 third year $220,000 fourth year $220,000 fifth year
J. Campion-Kenney Service Station
 Campion-Kenney Service Station is a retail gasoline station and repair shop. The plaintiff acquired a 100% interest in that business in 1986. Campion-Kenney leases the service station from Gulf.
 Campion Ambulance Services, Inc. purchases all of its gasoline at Campion-Kenney Service Station.
 No credible evidence was presented regarding the value of this asset.
 The following chart shows for the calendar years 1995 through 2000 the gross receipts and the income or loss for each calendar year for CT Page 11769 Campion-Kenney Service Station:
 Calendar Gross Receipts Income or Loans from Retained Year loss Shareholders earnings
 1995 $827,131 [$58,836] $278,550 [$214,724] 1996 $838,367 [$49,600] $347,500 [$272,125] 1997 $817,946 [$42,586] $366,660 [$320,373] 1998 $824,284 $71,533 $402,550 [$361,552] 1999 $888,810 $65,357 $406,550 [$288,539] 2000 $953,410 $3,180 $321,050 [$221,626]
 The reasons that the calendar years 1998, 1999 and 2000 have shown a profit rather than a loss is in part due to better gasoline prices from Gulf Oil and in part due to better lease terms with Gulf Oil.
 Court Exhibit A
No. FA99-0150800S : SUPERIOR COURT
SUSAN R. CAMPION : JUDICIAL DISTRICT OF WATERBURY
vs. : AT WATERBURY
WILLIAM T. CAMPION : SEPTEMBER 11, 2001
 STIPULATED AGREEMENT
The parties hereby agree and stipulate to the following:
1. The parties shall have joint legal custody of the minor child with physical custody in the plaintiff and reasonable, liberal and flexible rights of visitation in the defendant, to include, but not be limited to, every weekend from Saturday to Sunday 8:00 p.m. The plaintiff shall, however, be entitled to ten (10) weekends with the minor child each year upon reasonable notice to the defendant. The parties shall share all major holidays. Each party shall have up to three (3) weeks of exclusive parenting time with the minor child during the child's summer school vacation. The defendant shall provide the plaintiff with four (4) weeks prior written notice of the period of time he is requesting.
THE PLAINTIFF THE DEFENDANT
/s/___________________ /s/___________________ CT Page 11770 Susan R. Campion William T. Campion, Sr.
/s/___________________ /s/___________________ Rosemary E. Giuliano Gerald Roisman Attorney for the Plaintiff Attorney for the Defendant
/s/___________________ D. Susanne Snearly Guardian Ad Litem for the Minor Child
 GIULIANO RICHARDSON, LLC — ATTORNEYS AT LAW 39 SHERMAN HILL ROAD — WOODBURY, CT 06798 — (203) 263-0330 — JURIS #417811 Court Exhibit B
[EDITORS' NOTE: Exhibit B IS ELECTRONICALLY NON-TRANSFERRABLE.]
 Court Exhibit C
NO: FA99-0150800 S : SUPERIOR COURT
SUSAN R. CAMPION : JD OF WATERBURY
V. : AT WATERBURY
WILLIAM T. CAMPION : SEPTEMBER 10, 2001
 STIPULATION RE: PERSONAL PROPERTY
The Plaintiff in the above-captioned matter hereby stipulates that the Defendant can have the following items of personal property within seven days from the date of the approval of the Court:
 Dining room set Sewing Machine (antique one) Sundial Cement Garden Bench Extension Ladder Bose Radio Clothing Tools (garden and hand) Pink Lounge Chair in basement.
Dated at Hartford, Connecticut this 10th day of September 2001. CT Page 11771
/s/___________________ /s/___________________ SUSAN R. CAMPION WILLIAM T. CAMPION, SR. PLAINTIFF DEFENDANT
/s/___________________ /s/___________________ ROSEMARY E. GIULIANO GERALD ROISMAN PLAINTIFF'S ATTORNEY DEFENDANT'S ATTORNEY
 Court Exhibit D
[EDITORS' NOTE: Exhibit D IS ELECTRONICALLY NON-TRANSFERRABLE.]
[EDITORS' NOTE: Income and/or Losses Chart IS ELECTRONICALLY NON-TRANSFERRABLE.]
The defendant filed an individual tax return for the calendar year 2000. The tax returns for the calendar years 1990 through 1999 were joint income tax returns.
The total wages in the calendar year 1998 of $468,826 was based on the plaintiff earning approximately $50,000 and the balance being earned by the defendant. Approximately $20,000 of the $50,000 was income that she earned from Campion Ambulance Services, Inc. with the balance of approximately $30,000 being earned by her school job. The $138,600 gambling income for the calendar year 1998 actually represents a net gambling gain of approximately $22,223 as the defendant also had gambling losses in the calendar year 1998 of $116,377 which were offset against the gambling gains of $138,600. The plaintiff would accompany the defendant on many occasions when he went gambling and would also gamble. She did not object to his gambling. of the $450,886 combined wage income for the calendar year 1999, approximately $30,000 was for income earned by the plaintiff from her school job with the balance being earned by the defendant.
In the calendar year 1999, the parties had rental real estate partnership and S Corporation income of $133,799. That was income, in part, from the West Dover Street property that the plaintiff is the sole owner and Campion Ambulance Services, Inc. is the lessee. It also includes income from the 1969-1975 South Main Street, Waterbury, Connecticut property that is owned by Campion, LLC. The defendant owns a 95% interest in Campion, LLC and his son owns a 5% interest. It also includes rental income from property at 3 Country Club Road in Cheshire, Connecticut that is owned by the defendant only with Campion Ambulance Services, Inc. being the lessee. CT Page 11772
In the calendar year 2000, in addition to the $26,300 in gambling winnings, the defendant also had at least $26,300 in gambling losses.
The court finds as accurate the various sources of income shown by the defendant on his financial affidavit dated March 2, 2002, consisting of the following:
 A. Principle income as president of Campion Ambulance Services, Inc., in the gross weekly amount of $2,500 less taxes.
B. Annual bonus income in the gross amount of $300,000 less taxes.
C. Other income consisting of the following:
1. Weekly Rental (Campion Realty) $326 less taxes;
2. Weekly income Campion-Kenney Service Station $1,376 less taxes;
3. Campion, LLC $169 less taxes; and
4. Approximate interest and dividends $70 less taxes.
 D. Social Security $360 weekly less taxes. As a result of the defendant receiving social security benefits, the plaintiff receives on behalf of the minor child, social security benefits in the amount of $183 weekly.
The court is eliminating the weekly loss shown by the defendant arising from the catering business as that business together with the real estate where it is located is being assigned to the plaintiff. The defendant has legal fees totaling $36,825 and expert witness fees totaling $6,000.
He owns household furniture and furnishings with an unknown value. He has a Fleet Bank account with an approximate $700. He has loaned Campion Ambulance Services, Inc. approximately $100,000. He has life insurance with a total cash surrender value of $54,246. Excluded from that cash surrender value amount is a life insurance policy with a cash value of $134,000, that is owned by Campion Ambulance Services, Inc. One of his life insurance policies through Monarch, policy LM9003794 has a cash surrender value of $24,911. That policy is controlled by the handwritten stipulated agreement between the parties dated September 11, 2001 and restricts the defendant's use of the cash surrender value for any purpose other than medical and educational needs of the minor child. He has a 401K plan through Campion Ambulance Services, Inc. with a value of $56,987. He has a Monarch IRA with a value of $55,538. He has another CT Page 11773 Monarch IRA with a value of $43,490. He also has made loans to Campion-Kenney Service Station with a balance due him of $268,950.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81
(c) regarding the issue of property orders, and has considered the provisions of § 46b-84 and the Child Support Guidelines regarding the issue of support, and has considered the provisions of § 46b-56
regarding the issue of custody and visitation and has considered the provisions of § 46b-62 regarding the issue of attorneys' fees. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION OF MARRIAGE
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the amount of $1,200 weekly. Alimony is to terminate upon the earliest of the following events: a) the death of the plaintiff; b) the death of the defendant; c) the remarriage of the plaintiff; d) June 15, 2004. The minor child should have graduated High School by that date. Further, the court ordered weekly property orders will have commenced by that date. For each of those reasons, both separately and jointly, the plaintiff will not have as much need for alimony as of June 15, 2004. The court further orders that the length of alimony can not be extended beyond June 15, 2004.
2. The defendant is to name the plaintiff as beneficiary of $200,000 in life insurance. He can reduce that amount by $50,000 quarterly commencing November 5, 2002, and quarterly thereafter. The obligation to provide for the life insurance terminates when the alimony terminates.
C. BY WAY OF CUSTODY, VISITATION AND HEALTH INSURANCE
1. The typed Stipulated Agreement entered into between the parties dated September 11, 2001, is approved of and orders are entered in accordance with that Stipulated Agreement. A copy of that Stipulated Agreement is attached to this Memorandum of Decision and marked as Court Exhibit A. CT Page 11774
2. The parties also entered into a handwritten Stipulated Agreement dated September 11, 2001. Paragraph four of that Agreement provides as follows: "The defendant hereby agrees to maintain medical insurance for the minor child." The court enters orders in accordance with that paragraph. The balance of the handwritten Stipulated Agreement of September 11, 2001, is addressed later in this Memorandum of Decision.
D. BYWAY OF SUPPORT
1. The parties entered into a Stipulation dated April 19, 2002, regarding life insurance for the benefit of the minor child. That Stipulation is approved of and orders are entered in accordance with that Stipulation. That Stipulation is attached to this Memorandum of Decision and marked as Court Exhibit D.
2. The defendant is ordered to pay to the plaintiff support in the amount of $583 per week until such time as the child completes the twelfth grade or attains the age of 19 whichever first occurs. The provisions of § 46b-84 (c) are applicable. He is entitled to a credit for the social security benefit received by the plaintiff in the amount of $183 per week which reduces his direct support payment to the plaintiff to $400 per week. Any increase in the social security benefit received by the plaintiff is to be a credit against the defendant's support obligation. By way of illustration, if the social security benefit increases from $183 per week to $193 per week, then the direct support payment made by the defendant to the plaintiff reduces to $390 per week.
3. The defendant is to pay 84% of all unreimbursed medical expenses and the plaintiff is to pay 16% of such expenses.
E. BY WAY OF PROPERTY ORDERS
1. The parties entered into a handwritten Stipulated Agreement dated September 11, 2001. Paragraph four of that Agreement has already been approved of by the court. The remaining paragraphs of that Stipulated Agreement are approved of and orders are entered in accordance with those remaining paragraphs. A copy of that Stipulated Agreement is attached to this Memorandum of Decision and is marked as Court Exhibit B.
2. The parties entered into a Stipulation Re: Personal Property dated September 10, 2001. That Stipulation is approved of and orders are entered in accordance with that Stipulation. A copy of that Stipulation is attached to this Memorandum of Decision and marked as Court Exhibit C. CT Page 11775
3. The defendant shall transfer to the plaintiff by September 5, 2002, all of his interest in and to the real estate located at 1212 1218 Woodtick Road, Wolcott, Connecticut and the plaintiff shall assume and hold the defendant harmless from any and all obligations associated therewith.
4. The plaintiff shall assume and hold the defendant harmless from the liabilities set forth on Section 3 of her financial affidavit.
5. The defendant shall assume and hold the plaintiff harmless from the liabilities set forth in Section 3 of his financial affidavit.
6. All of the furniture, furnishings and miscellaneous property, jewelry and mink coat in the possession of the plaintiff are awarded to the plaintiff.
7. All of the bank accounts shown on the plaintiff's financial affidavit under Schedule C including the full interest in the Webster Bank joint CD are awarded to the plaintiff.
8. All of the stocks and bonds shown on the plaintiff's financial affidavit are awarded to the plaintiff.
9. All the deferred compensation plans shown on the plaintiff's financial affidavit are awarded to the plaintiff.
10. The plaintiff shall be exclusively entitled to the 1997 Buick Park Avenue automobile to which she holds title and shall assume and hold the defendant harmless from any and all obligations associated therewith.
11. The defendant is ordered to transfer to the plaintiff all of his interest in Embassy of Wolcott and in 1146 Spindle Hill Road, Wolcott, Connecticut by September 5, 2002. The defendant is responsible for keeping the mortgage payments for 1146 Spindle Hill Road, Wolcott, Connecticut current including any payment that may be due in September, 2002. The defendant is to hold the plaintiff harmless for any liabilities regarding the Embassy of Wolcott business. Any bank accounts regarding the Embassy of Wolcott business are awarded to the defendant. In the event the defendant has any events scheduled prior to September 5, 2002, he has a right to conduct those events, retain any income from such events and is responsible for all expenses connected with such events.
12. The defendant is ordered to transfer to the plaintiff all of his interest in his Monarch IRA ML1488248 by September 5, 2002. CT Page 11776
13. All of the household furniture and furnishings in the possession of the defendant are awarded to the defendant.
14. The Fleet Bank account shown on the defendant's financial affidavit is awarded to the defendant.
15. The Campion Ambulance 401K plan and the Monarch IRA ML1487187 shown on the defendant's financial affidavit are awarded to the defendant.
16. The life insurance policies shown on the defendant's financial affidavit and the cash surrender value relating thereto are awarded to the defendant subject to the Stipulation of April 9, 2002, and paragraph two of the handwritten Stipulation of September 11, 2001.
17. All of the defendant's interest in 15 West Dover Street and West Liberty Street, Waterbury, Connecticut, Port Malabar, Florida building lot, 3 Country Club Road, Cheshire, Connecticut, Campion, LLC, 197 Catering Road, Wolcott, Connecticut, Campion Realty, and Campion-Kenney Service Station, and Campion Ambulance Services, Inc. are awarded to the defendant.
18. The defendant is ordered to pay to the plaintiff as a property order the sum of $1,650,000 payable as follows:
 A. $2,000 per week commencing June 15, 2004, and $2,000 each and every week thereafter for a period of ten years. The remaining balance is due and payable June 22, 2014. In the event of the defendant's death prior to June 22, 2014, then the balance due as of the date of his death is due and payable in full within six months from the date of his death. All payments are to be without interest provided they are timely made. In the event any payment is more than 30 days late, then the remaining balance shall carry interest at the rate of 8% per annum.
 B. In the event the defendant sells any of his interest in Campion Ambulance Services, Inc., then the proceeds of such sale are to be paid over to the plaintiff to pay any remaining balance due on the $1,650,000 order. By way of illustration, in the event the defendant sells a 10% interest in Campion Ambulance Services, Inc., for $300,000 and there remains $1,000,000 due to the plaintiff, then the full $300,000 is to be paid to the plaintiff to reduce the $1,000,000 balance. In the event the defendant sells $2,000,000 of his interest in Campion Ambulance Services, Inc., and $900,000 remains due to the plaintiff, then she is to receive the $900,000 balance due to her.
CT Page 11777
19. $134,475 of the loan due from Campion-Kenney Service Station to the defendant is awarded to the plaintiff. In the event Campion-Kenney Service Station makes any payments to the defendant on such loan within 8 years from today's date, then one-half of such payments are to be paid over to the plaintiff. The plaintiff does not have the right to bring suit on such remaining balance until 8 years from today's date, unless the defendant fails to pay over to the plaintiff the one-half payment ordered within 30 days from the date he receives such repayment. The amount assigned to the plaintiff is without interest. The plaintiff is to prepare a formal assignment of that loan and is responsible for giving notice to Campion-Kenney Service Station of the assignment. The court retains jurisdiction over any dispute that may arise regarding the language of that assignment.
20. $50,000 of the loan due from Campion Ambulance Services, Inc., to the defendant is awarded to the plaintiff. In the event Campion Ambulance Services, Inc. makes any payments to the defendant on such loan within 4 years from today's date, then one-half of such payments are to be paid over to the plaintiff. The plaintiff does not have the right to bring suit on such remaining balance until 4 years from today's date, unless the defendant fails to pay over to the plaintiff the one-half payment ordered within 30 days from the date he receives such repayment. The amount assigned to the plaintiff is without interest. The plaintiff is to prepare a formal assignment of that loan and is responsible for giving notice to Campion Ambulance Services, Inc. of the assignment. The court retains jurisdiction over any dispute that may arise regarding the language of that assignment.
21. The defendant is to hold the plaintiff harmless regarding all assets assigned to him.
F. BY WAY OF ATTORNEYS' FEES AND OTHER EXPERT FEES
1. No attorneys fees or expert fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature who, in turn, is to send it to counsel for the minor child for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns for so long as there is an outstanding support order and/or CT Page 11778 alimony order and/or any arrearage thereto or any sums due to the plaintiff as a result of the assignments to her of the loans due from Campion-Kenney Service Station and/or Campion Ambulance Services, Inc. Further, as long as the Campion-Kenney Service Station assignment to the plaintiff remains unpaid, the defendant is to provide to the plaintiff, a copy of the tax return filed by Campion-Kenney Service Station within 30 days of its filing. As long as the Campion Ambulance Services, Inc., assignment to the plaintiff is unpaid, then a copy of the tax return for Campion Ambulance Services, Inc., is to be provided to the plaintiff within 30 days of its filing.
3. Any arrearages under the pendente lite orders up to the date this decision is filed are not merged into the judgment and survive the judgment.
 ___________________, J.T.R. AXELROD Judge Trial Referee
CT Page 11779